UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
┌─────────────────────────────────┐
│ J.J. WHITE, INC.,               │
│                                 │
│          Plaintiff,             │
│                                 │
│     v.                          │
│                                 │
│ AMERICAN SAFETY CASUALTY INS.   │
│ CO., et al.,                    │
│                                 │
│          Defendants.            │
└─────────────────────────────────┘
```

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 10-2656
(JEI/JS)

**OPINION**

**APPEARANCES:**

MARGOLIS EDELSTEIN
By: Peter S. Cuddihy
100 Century Parkway, Suite 200
Mount Laurel, NJ 08054
        Counsel for Plaintiff

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
By: Aileen F. Droughton
322 Highway 35 South, First Floor
Red Bank, NJ 07701
        Counsel for Defendant American Safety Casualty Ins. Co.

**IRENAS**, Senior District Judge:

Plaintiff J.J. White, Inc. ("J.J. White") initiated this action against American Safety Casualty Insurance Company ("American Safety") seeking a declaratory judgment that American Safety has a duty to defend, indemnify and insure J.J. White in connection with a state court personal injury action.[1]  Pending before the Court is American Safety's Motion for Summary Judgment.

---

[1]  The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

1

**I.**

This declaratory judgment action arises out of an underlying personal injury action filed in the Superior Court of New Jersey, Law Division, Gloucester County, on September 27, 2007.  The personal injury action was brought by William Davis and John Graybeal after they suffered injuries during an explosion at the Valero Paulsboro Refinery (the "Refinery") on September 29, 2005. (*See* Droughton Decl. Ex. F, ¶ 34.)  Davis and Graybeal asserted claims against various parties, including various Valero-affiliated entities, and their employer, J.J. White, who had contracted with Valero to provide maintenance services at the Refinery.  (*See generally id.*)  J.J. White in turn contracted with Workplace Compliance Solutions LLC ("WCS") and Med-Tex Services, Inc. ("Med-Tex") to provide safety services at the Refinery.  (*See generally id.*)

On August 27, 2010, all claims were settled through mediation.  (Def's 56.1 Stat. ¶ 19.)[2]  Ultimately, Aspen Speciality Insurance Company, Med-Tex's insurance company, agreed to contribute 1/4 of the settlement amount.  J.J White agreed to contribute 1/2 on behalf of itself and on behalf of Valero pursuant to an indemnification clause in J.J White's general contractor's liability insurance policy naming Valero as an

---

[2]  References to "Def's 56.1 Stat." are to American Safety's statement of undisputed material facts submitted in support of its Motion.

additional insured.  The remaining 1/4 was ultimately paid by J.J
White, and it now seeks reimbursement from American Safety
pursuant to WCS' insurance contract naming J.J. White as an
additional insured.[3]  The relevant policy was issued by American
Safety to WCS and effective from May 31, 2005 through May 31,
2006 ("the Policy").[4]  (Def's 56.1 Stat. ¶ 1.)

J.J White filed a Complaint in this action on April 6, 2010.
On April 16, 2012, American Safety filed the instant Motion for
Summary Judgment.  Oral argument was held on July 6, 2012.

## II.

"[S]ummary judgment is proper 'if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law.'"  *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.
56(c)).

In deciding a motion for summary judgment, the Court must
construe the facts and inferences in a light most favorable to

---

[3]  J.J. White seeks reimbursement for 1/4 of the settlement
amount plus approximately $200,000 in fees and costs.

[4]  The Policy is an occurrence based policy providing
coverage for bodily injury taking place during the policy period.
(Def's 56.1 Stat. ¶ 2.)  Since the bodily injury relevant to this
case took place on September 29, 2005, the relevant Policy is the
one in effect from May 31, 2005 through May 31, 2006.

the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"Summary judgment, of course, looks only to admissible evidence."  *Arnold Pontiac-GMC, Inc. v. Budd Baer, Inc.*, 826 F.2d 1335, 1339 (3d Cir. 1987); *see also Blackburn v. United Parcel Service*, 179 F.3d 81, 95 (3d Cir. 1999)(noting that hearsay statements that are inadmissible at trial should not be considered when determining whether Plaintiff has established a triable issue of fact).

### III.

In interpreting "the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route. If the language is clear, that is the end of the inquiry." *Chubb Custom Ins. Co. v. Prudential Ins. Co.*, 195 N.J. 231, 238 (2008)(citations omitted).  "[I]n the absence of an ambiguity, a

4

court should not engage in strained construction to support the imposition of liability or write a better policy for the insured than the one purchased." *Id.* (internal quotations and citation omitted). "If the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists" and "a court may look to extrinsic evidence as an aid to interpretation." *Id.* (citations omitted). Moreover, the insured is assumed to have knowledge of the contents of his insurance policy. *Heake v. Atlantic Cas. Ins. Co.*, 15 N.J. 475, 483 (1954).

American Safety argues that because Davis and Graybeal were employees of J.J. White, coverage under the Policy is barred by the Employer Liability Exclusion.  At oral argument, counsel for J.J. White made it clear that coverage under the Policy was being sought based on J.J. White's status as an additional insured.

The Employer Liability Exclusion excludes from coverage bodily injury to an "employee of any insured arising from and in the course of (a) Employment by any insured; or (b) Performing duties related to the conduct of the insured's business. . . ." (Droughton Decl. Ex. A at ASI 00163.)  J.J. White argues that "any insured" refers only to the named insured.[5]  The Court does not agree.  The Policy language "employee of any insured" unambiguously refers to any entity insured under the Policy,

---

[5]  There appears to be no dispute that the injury arose in the course of employment and while Davis and Graybeal were performing duties related to J.J. White's business.

whether as the named insured or as an additional insured.  There is nothing unclear about the phrase "any insured" and there is no basis for giving it any interpretation other than its ordinary meaning.  *See American Wrecking Corp. v. Burlington Ins. Co.*, 400 N.J. Super. 276, 283 (App. Div. 2008).  Thus, the plain language of the Employer Liability Exclusion bars from coverage bodily injury to an employee of any insured under the Policy.

Because Davis and Graybeal were employees of J.J. White, J.J. White is not entitled to coverage under the Policy for their bodily injury.[6]  For this reason, American Safety's Motion for Summary Judgment will be granted.

**IV.**

For the reasons stated above, Defendant American Safety's Motion for Summary Judgment will be granted.  An appropriate Order accompanies this Opinion.

Dated: July  9  , 2012

s/Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**

---

[6]  American Safety also argues that J.J. White is not entitled to coverage under the Policy for several additional reasons: (1) J.J. White was only an additional insured for its operations at 5500 Bingham Street, Philadelphia, PA, and the injury in this case occurred at a facility in Paulsboro, NJ; (2) coverage for additional insureds is limited to claims for bodily injury arising solely out of WCS' negligence; (3) coverage is barred by the Professional Services Exclusion; and (4) no coverage is afforded under the Environmental Consultants Professional Liability portion of the Policy.  Because the Court finds that the Employer Liability Exclusion applies, it will not reach these arguments.